UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DOUGLAS SNEDDEN,

    Plaintiff,

vs.

PERKINS & MARIE CALLENDER'S INC.,

    Defendant.

Case No. 1:16-cv-668

Judge Timothy S. Black

**ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION (Doc. 7)**

This civil action is before the Court on Defendant's motion to compel arbitration (Doc. 7) and the parties' responsive memoranda (Docs. 9, 10).

### I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Perkins supplies a wide variety of food products to over 400 owned or franchised restaurants, as well as numerous retail outlets throughout the United States. (Doc. 7-1 at ¶ 3). To do so, Perkins purchases and manages inventory, including materials, food ingredients, and other source products to support its business operation from distributors and wholesalers located throughout the United States. (*Id.*)

Plaintiff began working for the Foxtail Foods division of Perkins in 1995. (Doc. 7-1 at ¶ 4). When he was discharged on April 29, 2015, Plaintiff was employed as a Senior Food Scientist at the Foxtail Foods facility located in Fairfield, Ohio. (*Id.*)

On June 2, 2011, while Plaintiff was employed by the company, Plaintiff and the Foxtail Foods division entered into an Alternative Dispute Resolution Agreement ("Arbitration Agreement"), in which they agreed that any dispute between them would be

submitted to arbitration. In the Arbitration Agreement, the parties agreed:

ALTERNATIVE DISPUTE RESOLUTION AGREEMENT
(Personnel file copy)

By signing this document, I acknowledge that the Company utilizes a system of alternative dispute resolution that involves binding arbitration to resolve all disputes that may arise out of the employment context. Because of the mutual benefits (such as the reduced expense and increased efficiency) that private binding arbitration can provide both the Company and myself, I voluntary agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, or any other state or federal laws, regulations, or common law theories) that either I or the Company (or its owners, director, officer, managers, employees, agents, and parties affiliated with its employee benefit and health plans) may have against the other which would otherwise require or allow resort to any court or other governmental dispute resolution forum (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, or claims for medical and disability benefits under the appropriate worker's compensation act or state disability insurance act), shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act. In addition to the requirements imposed by law, any arbitrator herein shall be a retired judge of this state's court of general jurisdiction and shall be subject to disqualifications on the same grounds as would apply to a judge of such court. To the extent applicable in civil actions in the United States District Courts, the following shall apply and be observed: all rules of pleading, all rules of evidence, and all rights to resolution of the dispute by means of motions to dismiss, for summary judgment, and/or for judgment on the pleadings. Resolution of the dispute shall be based solely upon the law governing the claims and defenses (including but not limited to, notations of "just cause") other than such controlling law…Awards shall include the arbitrator's written reasoned opinion. Should any term or provision, or portion thereof, be declared void or unenforceable, it shall be severed and the remainder of this agreement shall be enforceable. I UNDERSTAND BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH THE COMPANY AND I GIVE UP OUR RIGHT TO TRIAL BY JURY.

(Doc. 7-1. Ex. A). Plaintiff printed and signed his name at the bottom of the Arbitration Agreement directly under the capitalized statement: "DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE STATEMENT & AGREEMENT." (*Id.*) The Arbitration Agreement appears printed as a separate agreement at the end of the Foxtail Foods Employee Handbook, following and separate from the Employee Handbook policies which are acknowledged via a separate Employee Acknowledgement Form. (Doc. 7-1 at ¶ 7).

On June 21, 2016, Plaintiff filed a multi-count complaint against Defendant alleging various claims relating to his employment arising under: (1) the Family Medical Leave Act; (2) the Age Discrimination in Employment Act; and (3) the Food Safety Act. Defendant moves the Court to compel Plaintiff to arbitrate these claims.

## II. STANDARD OF REVIEW

When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary"). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Stout*, 228 F.3d at 714. The "primary purpose" of the FAA is to

ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sci., Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, provided the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 thus "requires" a court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration to stay the court action pending arbitration once it is satisfied that the issue is arbitratable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).[1]

In considering a motion to compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Strout*, 228 F.3d at 714.

---

[1] *See also Santos v. Am. Broad. Co.*, 866 F.2d 892, 894 (6th Cir. 1989) ("[w]here the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration").

The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960). It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* Indeed, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007). If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. *Allied Steel & Conveyors*, 277 F.2d at 913. Furthermore, a district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. *Id.*

### III.  ANALYSIS

**A.  Whether the Arbitration Agreement is Valid**

It is undisputed that on June 2, 2011, Plaintiff voluntarily signed the Arbitration Agreement, agreeing that disputes between him and Perkins as his employer "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act." (Doc. 7-1, Ex. A).

A valid contract under Ohio law requires an offer, mutual assent, and consideration. *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002). In this case, Defendant presented Plaintiff with an offer to continue employment with the company

5

pursuant to the terms of the Arbitration Agreement and Plaintiff accepted the offer which is evidenced by his signature.[2] Accordingly, the Arbitration Agreement is a valid contract.

### B. Whether the Arbitration Agreement is Enforceable

Plaintiff claims that the Arbitration Agreement is not enforceable because: (1) it is illusory; (2) it lacks consideration; and (3) it is "too indefinite to be enforced."

#### 1. *Illusory*

First, Plaintiff argues that the Arbitration Agreement is illusory because the Employee Handbook states that it is subject to unilateral modification or revocation at any time. *See, e.g., Stanich v. Hissong Grp.*, No. 2:09cv143, 2010 U.S. Dist. LEXIS 98709, at *6 (S.D. Ohio Sept. 20, 2010) (arbitration clause was unenforceable where it was contained in a handbook that permitted unilateral modification of the agreement at any time).[3] However, the Employee Handbook's description of the alternative dispute resolution policy is not what binds the Plaintiff; the binding agreement is the separately-executed single-page document entitled "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT." (Doc. 7-1, Ex. A).

---

[2] The Arbitration Agreement specifically alerted Plaintiff in all caps that he was waiving his right to a jury trial and agreeing to binding arbitration: "I UNDERSTAND BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH THE COMPANY AND I GIVE UP OUR RIGHT TO TRIAL BY JURY." (Doc. 7-1, Ex A). The Arbitration Agreement also instructed Plaintiff to pose any questions to a company representative "before signing" the Agreement, but he did not. (*Id.*)

[3] In support of this argument, Plaintiff relies heavily on non-binding precedent from New Mexico and Colorado. (Doc. 9 at 4-8).

Plaintiff also argues that the Arbitration Agreement is illusory because it is not separate and distinct from the Employee Handbook. However, the case law Plaintiff cites in support of this argument is unpersuasive, because the arbitration agreements in those cases were embedded in employee handbooks. The Arbitration Agreement at issue in this case is not embedded within the Employee Handbook; it is a separate agreement. While an arbitration disclaimer in an employee handbook cannot serve as the basis for an order compelling arbitration, a separate stand-alone arbitration agreement can bind employees to arbitration.

For example, in *Cunningham-Malhoit v. Salomon Smith Barney, Inc.*, No. L-02-1277, 2003 Ohio App. LEXIS 2515 (Ohio App. May 30, 3003), an employee signed two documents entitled "Employee Handbook Receipt Form." *Id.* at 9. The employee handbooks to which each of these forms pertained both contained contractual waivers and reserved the right to change or modify handbook polices or procedures without notice. *Id.* at 7-8. The employee in *Cunningham* objected to arbitration on the grounds that the employee handbooks could not be binding contracts. The Ohio Court of Appeals agreed with the employee that the handbooks—each of which contained contractual waivers—could not provide the basis for a binding agreement to arbitrate. However, the court enforced the arbitration agreement on the basis that the Employee Handbook Receipt Forms operated as separate signed agreements to arbitrate. *Id.* at 8.

Similarly, here, Defendant is not arguing that the description of the alternative dispute resolution policy in the Employee Handbook is binding on the Plaintiff. Instead, the binding agreement is the separately-executed single-page document entitled

7

"ALTERNATIVE DISPUTE RESOLUTION AGREEMENT." (Doc. 7-1, Ex. A). Accordingly, the Arbitration Agreement is not illusory. *See also Corl v. Thomas & King*, No. 05AP-1128, 2006 Ohio App. LEXIS 2828, at *11 (Ohio App. June 13, 2006); *Butcher v. Bally Total Fitness Corp.*, No. 81593, 2003 Ohio App. LEXIS 1639, at *16 (Ohio App. Apr. 3, 2003).

### 2. *Consideration*

Next, Plaintiff alleges that the Arbitration Agreement fails for lack of consideration. Specifically, Plaintiff maintains that "Defendant did not offer him anything at the time … did not offer him a raise or a bonus in exchange for him signing." (Doc. 9 at 8). However, continued employment is sufficient consideration to support an agreement to arbitrate. *Dantz v. Am. Apple Group, LLC*, 123 F. App'x 702, 708 (6th Cir. 2005) (the employer made an offer for an unilateral contract involving mandatory and binding arbitration which the employee accepted by his continued employment). It is undisputed that Plaintiff signed the Arbitration Agreement on June 2, 2011 and continued to work for Defendant thereafter. *See, e.g., Corl*, 2006 Ohio App. LEXIS 2828 at 13-14 (the employee accepted the terms of the arbitration agreement with his continued employment which is valid consideration for the agreement). Accordingly, the Arbitration Agreement does not fail for lack of consideration.

### 3. *Clear and definite agreement to arbitrate*

Next, Plaintiff argues that the Arbitration Agreement is fatally ambiguous for the following reasons: (1) the method for appointment of an arbitrator; (2) the scope of discovery; and (3) the payment of arbitration fees.

8

The Arbitration Agreement incorporates the provisions of the Federal Arbitration Act, stating that disputes between the parties "shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act."  (Doc. 7-1, Ex. A). While the text of the Arbitration Agreement itself is silent with respect to the mechanism for appointing an arbitrator, the Federal Arbitration Act ("FAA") is not:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein,…then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5.  Accordingly, the method for appointing an arbitrator is not ambiguous.

The Arbitration Agreement also states that it has generally incorporated the federal rules of procedure and evidence.  (Doc. 7-1, Ex. A).  "To the extent applicable in civil actions in the United States District Courts, the following shall apply and be observed: all rules of pleading, all rules of evidence, and all rights to resolution of the dispute by means of motion to dismiss, for summary judgment, and/or for judgment on the pleadings."  *Id.*  Accordingly, the terms and scope of discovery are not ambiguous.

Finally, Plaintiff argues that the Arbitration Agreement fails because it is silent

regarding the handling of arbitration fees.[4] However, an agreement's silence as to arbitration costs is "plainly insufficient to render it unenforceable [because t]he 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000).

Accordingly, the Arbitration Agreement is not fatally ambiguous.

### IV.  CONCLUSION

For these reasons, Defendant's motion to compel arbitration (Doc. 7) is **GRANTED** and this civil action is **STAYED**. *See, e.g., Prima Paint Corp.*, 388 U.S. at 400 (Section 3 of the FAA "requires" a court in which suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration *to stay the court action pending arbitration* once it is satisfied that the issue is arbitratable under the agreement.") (Emphasis added). The parties shall jointly notify the Court promptly upon conclusion of the arbitration with respect to how they intend to proceed.

**IT IS SO ORDERED**.

Date:  12/5/16                                          *s/ Timothy S. Black*
                                                                       Timothy S. Black
                                                                       United States District Judge

---

[4] The authority Plaintiff cites in support of this position, *Cooper v. MRM Inv. Co.*, 367 F.3d 493 (6th Cir. 2003), is distinguishable. *Cooper* addressed the enforceability of an arbitration agreement with a cost-splitting provision incorporating a former version of the American Arbitration Association rules, application of which required claimants in arbitration to contribute a potentially sizeable portion of the fees. The Court in *Cooper* specifically distinguished a case similar to the instant matter in which the agreement was silent as to the portion of fees, if any, to be borne by a potential claimant.